**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LOUIS BAKER, | No. CV-07-1553-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| CITY OF TEMPE, ARIZONA, a body politic; CHUCK SCHOVILLE; BRANDON BANKS; JASON WOLFE; JANE DOES and JOHN DOES I-X; ENTITIES, CORPORATIONS, PARTNERSHIPS, A-Z, | |
| Defendants. | |

Pending before this Court are two motions for summary judgment: one by Defendant Chuck Schoville ("Officer Schoville"); another by Defendants City of Tempe ("Tempe"), Brandon Banks ("Officer Banks"), and Jason Wolfe ("Wolfe"). (Dkt. ## 52, 55.) For the reasons below, the Court will grant the motions with respect to the § 1983 claims and dismiss the state law claims without prejudice.[1]

---

[1] The parties' requests for oral argument are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

On August 22, 2006, Louis Baker ("Baker") and Robert Tarvin ("Tarvin"), both African-Americans, were in a motor vehicle in Tempe. (Dkt. # 9 at 3.) Meanwhile, Officer Schoville, Officer Banks, and Wolf (collectively, the "individual defendants") were riding together in a Tempe Police Department patrol car. (Dkt. # 55 at 2.) At the time, Officer Schoville and Officer Banks were Tempe Police officers, while Wolf was Tempe's Media Services Producer. (Dkt. # 9 at 2.) Officer Schoville was also host of "StreetBeat," a cable television program about law enforcement, aired jointly by the Tempe Police Department and the Tempe Media Services Division. (Dkt. # 56 at 2.). Officer Banks also served as StreetBeat's producer, while Wolf directed, filmed, and edited StreetBeat segments. (*Id.*)

The individual defendants observed Baker throw trash out of his car window. (*Id.*) Officer Schoville therefore initiated a traffic stop, which Wolf filmed.[2] (*Id.*) The encounter proceeded as follows.

Officer Schoville ordered Baker and Tarvin out of the vehicle to investigate the criminal offense of littering. (Dkt. ## 9 at 3, 56 at 2.) Officer Schoville then asked Tarvin to retrieve the trash, and Tarvin complied. (Dkt. # 56 at 3.) Next, Officer Schoville asked Baker for a driver's license; however, Baker produced only a state-issued identification card and did not mention his license was suspended. (Dkt. # 9 at 4; 56 at 3.) Thus, Officer Schoville contacted a radio dispatcher to do a driver's license and warrant check. (Dkt. # 56 at 3.)

While Officer Schoville talked to the dispatcher, Baker began a conversation with Officer Schoville about a football video game. (*Id.*) During this time, Tarvin returned with the trash, and Officer Schoville asked Tarvin if he knew how much he had saved Baker in ticket costs, to which Tarvin responded "about five hundred." (*Id.* at 4.)

---

[2] Defendants allege the camera was turned off on two occasions—(1) when the dispatcher informed Officer Schoville that Baker's license was suspended and (2) when Baker and Tarvin allegedly told Officer Schoville that they enjoyed rapping—but Baker disputes that assertion.

Officer Schoville then learned the records check revealed Baker's license was suspended, and Officer Schoville noted Baker could not drive away without a license. (*Id.* at 4.)

The conversation again returned to football and eventually turned to rap. (*Id.* at 5.) The parties dispute how the conversation turned to rap,[3] but at some point Officer Schoville told Baker he could avoid a ticket if he and Tarvin performed a rap on camera.[4] (*Id.* at 5–6.) Baker responded, "Yeah, I'll rap about littering." (*Id.* Ex. E at 8.) Baker and Tarvin rapped:

> The dangers of littering you will get a ticket, if you aint with it. You better be experience because . . . Yo I just got pulled over cuz I threw my trash out the window when they rolled over the guy behind me pulled me over, when I'm down here in Maricopa. (*Id.* at 9.)

Baker and Tarvin laughed after completing the rap. (*Id.* at 8)

Next, Officer Schoville brought up football again, commenting that it would be the "Raiders in the Super Bowl this year," to which Baker responded, "Oh, you're right." (Dkt. # 56 at 6.) Officer Schoville then responded, "Yeah, you know I'm right. You know why you say I'm right? Cuz I got a gun and a badge. I'm always right." (*Id.* Ex. E at 9.) The conversation ended without Officer Schoville issuing any citations.

The videotaped encounter was edited to a ninety-second version, which was broadcast at least twenty times in Tempe on StreetBeat and posted on the internet. (Dkt. # 9 at 6.) Baker brought this action against Officer Schoville, Officer Banks, and Wolfe individually and against Tempe. (Dkt. # 9.) Baker alleged a claim under 42 U.S.C. § 1983 against both the individual Defendants and Tempe, and Baker also alleged various state law claims (Intentional Infliction of Emotional Distress, Invasion of Privacy, Defamation).

---

[3] Defendants contend Baker and Tarvin told Officer Schoville that they liked to rap "just for fun." Baker, however, contends he "did not rehearse or suggest the idea of performing a rap number for the police and Wolf in front of the camera." (Dkt. # 68 at 4.)

[4] With the video beginning mid-sentence, Officer Schoville stated, "good for driving on a suspended license, no ah littering ticket if you just do a little rap about, what do you want to rap about, littering?" (Dkt. # 56 Ex. E at 8).

**DISCUSSION**

**I.     Summary Judgment Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. Then, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

**II.    Analysis**

**A.   Baker Has Not Shown the Individual Defendants Violated His Constitutional Rights.**

Section 1983 does not create any substantive rights; rather it is a vehicle whereby plaintiffs can challenge actions by governmental officials. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must [allege] that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); *see* 42 U.S.C. § 1983. There appears to be no dispute that the individual defendants

acted under color of state law. However, to prevail on summary judgment motions, Baker must nonetheless identify the constitutional right or rights of which Defendants deprived him. He has failed to do this with any particularity in his Responses.

Although Baker's responses generally state that he was "subjected to abusive and improper police conduct on account of [his] race," his complaint does not allege an equal protection violation, nor, in his response does he raise any facts, or cite to any case law, that raises an issue about whether the Defendants violated the Baker's right to equal protection. By failing to make any such argument in his responses, he has waived it. *See* LRCiv. 7.2(b), (c), (I); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) (holding that a party's argument was waived because "[i]nstead of making legal arguments," the party simply made a "bold assertion").

The gist of the argument Baker does make, however, is that his Fourth Amendment rights were violated because he was unreasonably seized. Baker concedes he littered and thus Officer Schoville had probable cause to stop and arrest or cite him for the misdemeanor of littering. Further, upon stopping him, the individual Defendants also discovered that Baker was driving on a suspended license, and that he was driving without mandatory insurance. This further gave the Officer Schoville probable cause to arrest or cite the Plaintiff.[5] Despite the existence of this probable cause, however, Plaintiff argues the individual Defendants' stop or "seizure" of him was unreasonable because their purpose in stopping him was not to cite him, but to obtain television footage for "StreetBeat"– the cable television program in which each of the Defendants was involved. This motivation for seizing him, Baker argues, violated his Fourth Amendment rights, despite the fact that the individual Defendants had probable cause for doing so. He further alleges that the Defendants' manipulation of him into providing what they hoped would be entertaining footage for their television program turned out to be racially insensitive and personally

---

[5] Driving without insurance is not a criminal offense, but law enforcement officers may issue civil citations. Ariz. Rev. Stat. 28-4135.

- 5 -

demeaning.

The Court need not decide at this juncture whether the facts, as demonstrated, may raise issues as to whether Baker has a right to recover under state law. It is sufficient to note that Plaintiff has raised no claims of constitutional dimension. The case authority demonstrates that once Officer Schoville had a reasonable basis to stop Baker for the crimes of littering and driving without a license, he did not violate Baker's constitutional rights by doing so even if he had an ulterior motive for the stop. An officer's "state of mind . . . is irrelevant to the existence of probable cause. . . . That is to say, [his or her] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren v. United States,* 517 U.S. 806, 813 (1996) (quoting *Scott v. United States,* 436 U.S. 128, 138 (1978)). At a minimum, Officer Schoville had a legal justification for stopping Baker for the time it took to detain him, run a search on his driver's license, determine whether he would issue him any citations, and issue the citations or make the arrest if he so chose.

Baker provides no legal authority and makes no argument that the individual Defendants violated Baker's constitutional rights when Officer Schoville conditioned his decision to let Baker go without arrest on Baker's willingness to perform an anti-littering rap for StreetBeat. Thus, the Court cannot conclude that such a condition amounts to a § 1983 violation. Further, as stated above, Baker concedes that Officer Schoville had probable cause to arrest or cite him for multiple misdemeanor violations. If, under such circumstances, Baker agreed to perform the rap for the StreetBeat program to avoid such citations, the individual Defendants did not violate Baker's constitutional rights by filming the performance when the violation and the performance occurred in a public place. There are no facts to suggest that, other than directing that the rap be about not littering, Schoville required that the rap contain any particular content or be performed in any particular fashion.

Baker further seems to argue, however, that even if the initial stop was appropriate, once Officer Schoville asked Plaintiff to perform the anti-littering rap as a condition of not receiving any citations, there was no further justification for detaining him. Again, Baker offers no authority to support this proposition. As the Court understands his argument, Baker contends the stop became unreasonable for the duration of time, apparently less than two minutes, that it took the individual Defendants to film Baker and Tarvin performing the rap. As an initial matter, it is not clear here how the anti-littering rap that Schoville asked Baker to perform as a condition of not being cited for littering is unrelated to the original purpose of the stop.

Moreover, it is not clear how Officer Schoville could, consistent with § 1983, condition Plaintiff's release on his agreement to perform an anti-littering rap for his program, and yet violate § 1983 by filming the bargained-for performance. Even assuming that Plaintiff is making an alternative argument that the individual Defendants at some point exhausted the basis that initially justified their stop, it still does not violate § 1983 for the officers to ask questions unrelated to the original purpose of the stop so long as they do not overly-prolong the stop. *United States v. Turvin,* 517 F.3d 1097, 1101–04 (9th Cir. 2008) (holding officers acted constitutionally by extending the length of a traffic stop by several minutes to ask about drugs and to ask for consent to search the defendant's vehicle); *United States v. Mendez,* 426 F.3d 1077, 1081 (9th Cir. 2007) (holding officers may ask questions in the course of a traffic stop). Baker does not suggest that it is unconstitutional for Schoville to request someone to perform a rap for his program, nor does he provide any authority to suggest that it was unconstitutional for Schoville to condition his release of Baker on Baker's willingness to perform for his public access program. Thus, Baker states no § 1983 claim against the Defendants.

Baker contends that Wolf and Officer Banks are liable for failing to intervene to stop Officer Schoville from violating Baker's rights. An officer has an affirmative duty to intercede to prevent constitutional violations by fellow officers if reasonable officers would have known the conduct was unconstitutional. *See Motley v. Parks,* 383 F.3d 1058, 1071

(9th Cir. 2004). Because Baker has not shown Officer Schoville's actions were unconstitutional, however, Wolf and Officer Banks's failure to intervene likewise is not constitutional.

### B. Baker Has Not Established Municipal Section 1983 Liability Against Tempe.

A municipality is liable under § 1983 only if "the municipality *itself* causes the constitutional violation at issue," and not under respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)); *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

There are two routes to municipal liability under § 1983. *Gibson*, 290 F.3d at 1185. Only one, the *Canton* route, is applicable here.[6] Even if a municipality did not directly violate someone's rights or instruct an employee to do so, a municipality still is liable if (1) a municipal employee violated the plaintiff's constitutional rights, (2) the municipality has "customs or policies that amount to deliberate indifference," and (3) "these policies were the moving force behind the employee's violation of [the plaintiff's] constitutional rights, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Id.* at 1193–94.

As discussed earlier, the individual Defendants did not violate Baker's constitutional rights. Therefore, the municipality cannot be held liable for a violation of Baker's constitutional rights.

### C. The Remaining State Claims Are Dismissed Without Prejudice.

Because the Court concludes no federal claims survive summary judgment, the Court

---

[6] A municipality is also liable if it inflicts a constitutional injury through its policy, custom, or practice, such as by directly violating someone's rights or by instructing someone else to do so. *Gibson*, 290 F.3d at 1185 (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). The plaintiff must show "the municipality acted with 'the state of mind required to prove the underlying violation,' just as a plaintiff does when he or she alleges that a natural person has violated his federal rights" under § 1983. *Id.* at 1187 (quoting *Brown*, 520 U.S. at 405). In this case, Baker does not allege Tempe directly violated his constitutional rights or that Tempe instructed any of the individual Defendants to do so.

dismisses the state claims for Intentional Infliction of Emotional Distress, Invasion of Privacy, and Defamation. When a district court "dismisses [federal claims] leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley Racing, Inc. V. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989). Only in the "unusual case" should federal courts retain jurisdiction over the state law claims. *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994). Baker does not allege any reason this case is uniquely appropriate for federal jurisdiction, and thus dismissal without prejudice is appropriate.

**CONCLUSION**

Baker's § 1983 claims fail against both the individual Defendants and Tempe, and the Court dismisses without prejudice Baker's claims for Intentional Infliction of Emotional Distress, Invasion of Privacy, and Defamation.

**IT IS THEREFORE ORDERED** that both Motions for Summary Judgment (Dkt. ## 52, 55) are **GRANTED IN PART**, with respect to all claims arising under 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims for Intentional Infliction of Emotional Distress, Invasion of Privacy, and Defamation are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this matter.

DATED this 21st day of September, 2009.

_____
G. Murray Snow
United States District Judge